UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMNESTY INTERNATIONAL USA; GLOBAL FUND FOR WOMEN; GLOBAL RIGHTS; HUMAN RIGHTS WATCH; INTERNATIONAL CRIMINAL DEFENSE ATTORNEYS ASSOCIATION; THE NATION MAGAZINE; PEN AMERICAN CENTER; SERVICE EMPLOYEES INTERNATIONAL UNION; WASHINGTON OFFICE ON LATIN AMERICA; DANIEL N. ARSHACK; DAVID NEVIN; SCOTT MCKAY; and SYLVIA ROYCE, | STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | Case No. 08 Civ. 6259 (JGK) |
| v. | ECF CASE |
| JOHN M. McCONNELL, in his official capacity as Director of National Intelligence; LT. GEN. KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; and MICHAEL B. MUKASEY, in his official capacity as Attorney General of the United States, | |
| Defendants. | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

JAMEEL JAFFER
MELISSA GOODMAN
L. DANIELLE TULLY
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

CHRISTOPHER DUNN
ARTHUR EISENBERG
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

CHARLES S. SIMS
THEODORE K. CHENG
MATTHEW J. MORRIS
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
212-969-3000

Attorneys for Plaintiffs

September 12, 2008

1. In the fall of 2001, President Bush authorized the National Security Agency ("NSA") to launch a secret electronic surveillance program (the "Program").

    A. In December 2005 *The New York Times* reported that soon after the September 11 attacks President Bush had secretly authorized the NSA to intercept the international communications of Americans without first obtaining the court-approved warrants normally required for domestic surveillance. Jaffer Decl. ¶3 (Exh. A).

    B. President Bush acknowledged: "In the weeks following the terrorist attacks on our Nation, I authorized the National Security Agency, consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to Al Qaida and related terrorist organizations." Jaffer Decl. ¶4 (Exh. B).

2. President Bush reauthorized the Program repeatedly between 2001 and 2007. Jaffer Decl. ¶5 (Exh. C).

3. Under the Program, the NSA intercepted telephone and e-mail communications that originated or terminated inside the United States.

    A. Then-Attorney General Alberto Gonzales stated at a press conference: "The President has authorized a program to engage in electronic surveillance of a particular kind, and this would be the intercepts of contents of communications where one of the -- one party to the communication is outside the United States." Jaffer Decl. ¶6 (Exh. D).

4. Under the Program, the NSA intercepted electronic communications without probable cause, and without obtaining a warrant or any other type of judicial authorization.

A. Then-NSA Director General Michael Hayden stated that the NSA targeted for interception "calls . . . [the government has] a reasonable basis to believe involve al Qaeda or one of its affiliates." Jaffer Decl. ¶7 (Exh. E).

   B. General Hayden stated that decisions to monitor particular targets were made by NSA "shift supervisors." Jaffer Decl. ¶6 (Exh. D).

5. The FISC issued orders in January 2007 that authorized the Government to "target for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization." Jaffer Decl. ¶8 (Exh. F).

6. The January 2007 FISC orders subjected any electronic surveillance that was occurring as part of the Program to the approval of the Foreign Intelligence Surveillance Court. Jaffer Decl. ¶9 (Exh. G).

7. A FISC judge modified the January 2007 orders in the spring of 2007, reportedly narrowing the authority that the FISC had extended to the executive branch in January. Jaffer Decl. ¶9 (Exh. G).

8. Following the FISC's modification of its January 2007 orders, Director of National Intelligence ("DNI") John M. McConnell appealed to Congress to amend FISA. Jaffer Decl. ¶10 (Exh. H).

9. Plaintiffs are harmed by the challenged law.

   A. Plaintiffs are attorneys and human rights, labor, legal, and media organizations whose work requires them to engage in sensitive and sometimes privileged telephone and e-mail communications with colleagues, clients, journalistic sources, witnesses, experts, foreign government officials, and victims of human rights abuses located outside the United States. Royce Decl. ¶¶2-6; Mariner Decl. ¶¶2, 5-9; Walsh Decl. ¶¶3, 5; Klein Decl. ¶¶2-4.

   B. Some of the plaintiffs communicate by telephone and e-mail with people the U.S. government believes or believed to be associated with terrorist organizations. Royce Decl. ¶¶3-6; Mariner Decl. ¶8; Walsh Decl. ¶6.

   C. Some of the plaintiffs communicate by telephone and e-mail with political and human rights activists who oppose governments that are supported economically or militarily by the U.S. government. Klein Decl. ¶¶6-7; Walsh Decl. ¶6.

   D. Some of the plaintiffs communicate by telephone and e-mail with people located in geographic areas that are a special focus of the U.S. government's counterterrorism or diplomatic efforts. Mariner Decl. ¶8; Walsh Decl. ¶¶5, 8, 11.

E. All of the plaintiffs exchange information that constitutes "foreign intelligence information" within the meaning of the FAA. Royce Decl. ¶8; Mariner Decl. ¶8; Walsh Decl. ¶¶5-6, 8-9, 11; Klein Decl. ¶¶5-6.

F. Because of the nature of their communications and the identities and geographic location of the individuals with whom they communicate, plaintiffs reasonably believe that their communications will be acquired, retained, analyzed, and disseminated under the challenged law. Royce Decl. ¶5; Mariner Decl. ¶8; Walsh Decl. ¶¶4-6, 8, 11; Klein Decl. ¶¶5-6.

G. The FAA disrupts Plaintiffs' ability to engage in confidential communications – communications that are integral to their professional activities. Royce Decl. ¶¶7-9; Mariner Decl. ¶¶9-11; Walsh Decl. ¶¶7, 9-13; Klein Decl. ¶¶7-9.

H. The FAA compromises plaintiffs' ability to locate witnesses, cultivate sources, gather information, communicate confidential information to their clients, and to engage in other legitimate and constitutionally protected communications. Royce Decl. ¶¶6, 9; Mariner Decl. ¶10; Walsh Decl. ¶¶9-13; Klein Decl. ¶¶8-9.

I. Plaintiffs have ceased engaging in certain conversations on the telephone and by e-mail. Royce Decl. ¶¶7-8.

J. The FAA forces plaintiffs to take costly and burdensome measures to protect the confidentiality of sensitive and privileged communications. Mariner Decl. ¶10; Klein Decl. ¶9; Royce Decl. ¶7.

K. Because the FAA inhibits their ability to communicate by telephone and e-mail with sources, clients, and others essential to their work, some plaintiffs must now travel long distances to meet personally with individuals. Mariner Decl. ¶10; Klein Decl. ¶9; Royce Decl. ¶7.

L. The threat of surveillance under the new law has a much greater impact on plaintiffs' work than previous U.S. government surveillance. Walsh Decl. ¶11; Mariner Decl. ¶11.

Respectfully submitted,

/s/ Jameel Jaffer
JAMEEL JAFFER (JJ-4653)
MELISSA GOODMAN (MG-7844)
L. DANIELLE TULLY (DT-0509)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENBERG (AE-2012)
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

CHARLES S. SIMS
THEODORE K. CHENG
MATTHEW J. MORRIS
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
212-969-3000

Attorneys for Plaintiffs

September 12, 2008